## STILLWELL v. JACKSON.
### Opinion delivered December 16, 1905.

1. COUNTY TAX—PAYMENT IN COUNTY WARRANTS.—Notwithstanding a county levying court, in levying a special tax of two mills on the dollar to build a new courthouse, ordered that the said tax should be "receivable only in currency or proper warrants drawn by proper order on the courthouse fund," a tax levied for this purpose can be paid in county warrants drawn upon funds appropriated for ordinary county purposes; Const. 1874, art. 16, § 10, providing that the taxes of counties shall be payable in United States currency or in warrants of said counties. (Page 253.)

2. SAME—DIVERSION.—The Constitution of 1874 (art. 16, § 11) in providing that no moneys arising from a tax levied for one purpose shall be used for any other purpose, does not prohibit the payment of a tax levied to build a courthouse in county warrants drawn upon funds appropriated for ordinary county purposes. (Page 254.)

3. CONSTITUTIONAL LAW—DUTY TO UPHOLD STATUTES.—It is the duty of the courts to uphold and enforce a statute, rather than to declare it void, unless it be found to be clearly in conflict with the Constitution. (Page 257.)

Appeal from Ashley Circuit Court; Z. T. Wood, Judge; affirmed.

Petition by T. A. Jackson to the circuit court of Ashley County for mandamus to compel Henry Stillwell, the collector of

taxes, to accept from the petitioner county warrants in payment of his taxes levied for county purposes.

The circuit court sustained the prayer of the petition, ordered the issuance of a peremptory writ of mandamus, and the collector appealed to this court.

*Robert E. Craig, John B. Jones* and *T. M. Hooker,* for appellant.

The act (Kirby's Digest, § 1499) fixes the expenses for which appropriations are to be made, and against which ordinary county warrants are to be drawn. The construction of courthouses is provided for by separate statute, the act authorizing their construction was a special act, and no previous appropriation by the quorum court is necessary to sustain a levy of tax for the construction of a courthouse. 63 Ark. 397. For contracts for ordinary county purposes an appropriation is necessary, or such contracts are void. 54 Ark. 645. A tax levied for the purpose of building a courthouse is a special tax, and could not be paid with warrants drawn on the treasurer payable out of any money appropriated for ordinary county purposes. Sec. 11, art. 16, Const.; 27 Ark. 607. Each levy is a separate and distinct tax, and must be discharged in money, or by warrants drawn on that particular fund. 23 Barb. 338; 63 Ark. 397; 68 Ark. 347. Neither § 10, art. 16, Const., nor § 1174, Kirby's Digest, has any reference to a special courthouse tax. The county court had a right to levy the tax in currency for building the courthouse, and to contract for its erection, to be paid in currency. 36 Ark. 577; § 28, art. 7, Const.; § 1011, Digest. The obligation of the county to pay in currency cannot be impaired by absorption of the fund created by the special levy with ordinary county warrants. 28 Ark. 333; 36 Ark. 577.

*J. M. Moore, W. B. Smith* and *T. E. Mears,* for appellee.

The levy for the building the courthouse was a county tax, and the warrant tendered was properly receivable in payment of such tax. 28 Ark. 323; 29 Ark. 354; 34 Ark. 356; 30 Ark. 558; 36 Ark. 487; 39 Ark. 139; 72 Ark. 27; 57 Ark. 554; 50 Ark. 393. All county warrants are receivable for any taxes for county purposes, except interest on the public debt and sinking fund, and for all debts due the county by whose authority the same were issued. Kirby's Digest, § 1174; *Ib.* § 1466. The decision

in 27 Ark. 607, on the point that a tax for a specific purpose must be paid in currency or in warrants drawn on that specific fund, was overruled in 28 Ark. 323. Whatever sums the county authorities are authorized to levy for public purposes constitute a county tax. 28 Ark. 323; 32 Ark. 414; *Ib.* 619; 29 Ark. 353. Warrants drawn by the clerk, specifying the funds or appropriations against which they are drawn, are then receivable for *all* taxes lawfully levied by the county court. 34 Ark. 356-370; 36 Ark. 487; 37 Ark. 110.

McCULLOCH, J. The county court of Ashley County made an order for the construction of a new courthouse, a contract was made for the construction of the building, and the same has been completed. This order was made at the October term, 1903, of the levying court, and that court, after making the appropriations for the various items of ordinary expenses of the county for the current year, and levying a tax of three mills to cover the same, made the following order with reference to the new courthouse:

"It is ordered by the court that the sum of $40,000 be and the same is hereby appropriated and set apart to build a new courthouse. It is further considered and ordered by the court that a special levy of two mills tax on the dollar be and the same is hereby levied on all the taxable property of Ashley County to build a new courthouse, and that said tax be receivable only in currency or proper warrants drawn by proper order on the courthouse fund."

The contract for the construction of the building stipulated that the contract price should be paid in "warrants drawn on the courthouse fund, as provided for in the order of the Ashley County Levying Court, at its October term, 1903." A similar levy of taxes for the year 1904 was made by the court at the October term, 1904. Appellee, Jackson, being a taxpayer of the county and the holder of a warrant issued by the county court in his favor on the treasurer of the county to be paid out of the funds appropriated for ordinary county purposes, tendered the warrant to the tax collector in payment of that part of his taxes levied for all county purposes, including the so-called special levy for erection of courthouse. Upon the refusal of

that officer to accept the warrant, he brought this suit to compel its acceptance.

The sole question presented is, whether or not a tax levied for this purpose can be paid in county warrants drawn upon funds appropriated for ordinary county purposes.

The various statutes of this State which, it is claimed, authorize the payment of county taxes in county warrants, as found in Kirby's Digest, are as follows:

"Sec. 1466. All warrants drawn on the. treasury shall be paid out of any money in the treasury not otherwise appropriated, or out of the particular fund expressed therein, and shall be received, irrespective of their date and number, in payment of all taxes and debts accruing to the county."

"Sec. 1174. All county warrants and county scrip shall be receivable for any taxes for county purposes except for interest on the public debt and for sinking fund, and for all debts due the county by whose authority the same were issued.   *   *   * Provided, that nothing in this act shall authorize the collector to receive scrip issued since the adoption of the Constitution in payment of the tax levied to pay the indebtedness existing before the adoption of the Constitution." Act December 14, 1875.

"Sec. 7056. The collector shall receive county warrants in payment of county taxes.   *   *   *   Provided, this section shall not be so construed as to compel the acceptance of any order or warrant that by the laws of this State was required to be funded." Act of March 31, 1883, § 112.

It is plain, from the language of these several statutes, that the Legislature meant to provide that all county warrants shall be received in payment of any county taxes, except for taxes levied to pay indebtedness of the county which existed prior to the adoption of the Constitution of 1874. The reason for the exception is obvious, and is found in the language of the Constitution marking a distinction between the limit of taxation for the two purposes. This intention is clearly recognized by a line of decisions of this court beginning with a decision rendered at an early day in the history of the State, construing a statute in force to this day. *State* v. *Rives,* 12 Ark. 721; *Wallis* v. *Smith,* 29 Ark. 354; *Worthen* v. *Roots,* 34 Ark. 356; *Parham* v. *Izard,* 30 Ark. 558.

From these statutes may be gathered an intention on the part of the lawmakers to give first care, so far as not in conflict with the organic law of the State, to the interest of the taxpayer, who is also a creditor of a county or municipality, by allowing him to pay his taxes due to those governmental entities with their respective warrants. That view seems to have appealed to the legislative sense of natural justice. As said by Mr. Justice EAKIN in *Worthen* v. *Roots, supra:* "It is a very remarkable thing that the right to use county warrants in payment of taxes should be crystalized into a constitutional provision, and indicates a strong sense in the convention of the evil and danger to the very framework of our government (which is built upon counties) of allowing the county debt to become utterly valueless to the citizen, as well as the hardship to the citizen of compelling services which would be, to all practical intents, gratuitous."

The only discordant view expressed in any of the decisions of this court is a *dictum* in the case of *Wells* v. *Cole,* 27 Ark. 603, which has been overruled by subsequent decisions. *English* v. *Oliver,* 28 Ark. 317; *Parham* v. *Izard, supra.* There is language in the opinion in that case expressing a contrary view, but the point raised and decided was altogether different from the question now being discussed.

It is urged by learned counsel for appellant that the tax levied for erecting a courthouse is a special tax, in the meaning of the Constitution; that the statutes were not meant to allow a county tax levied for a special purpose to be paid in warrants issued on a different county fund; and that, if they were so meant, they are in conflict with the Constitution, and to that extent are void.

The several sections of the Constitution of 1874 bearing on the subject are found in article 16, and are as follows:

"Sec. 9. No county shall levy a tax to exceed one-half of one per cent. for all purposes, but may levy an additional one-half of one cent. to pay indebtedness existing at the time of the ratification of this Constitution.

"Sec. 10. The taxes of counties, towns and cities shall only be payable in lawful currency of the United States, or the orders or warrants of said counties, towns and cities, respectively.

"Sec. 11. No tax shall be levied except in pursuance of law,

and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose."

It will be observed that the Constitution first provides that taxes of counties shall only be payable in United States currency or in county warrants, and then provides that "no money arising from a tax levied for one purpose shall be used for any other purpose." No positive prohibition is found in that instrument against the payment of county taxes with county warrants. On the contrary, reading the above sections together, we think it is clear that the framers of the Constitution intended to make a provision for the payment of county taxes with warrants of the county, and that it is not forbidden by the subsequent section, even though the effect might be to divert some of the funds appropriated for one county purpose to that of another. For instance, outstanding warrants drawn on funds appropriated to defray expenses of the several courts of the county might be used in payment of taxes levied for county purposes to such an extent that the amount of money received by the collector would not be sufficient to meet the appropriation to defray the expense of keeping the paupers of the county, yet it can not be seriously contended, under the statutes and previous decisions, that this would be in violation of the Constitution. The same can not be said of funds appropriated and levied, in excess of five mills levied for county purposes, to pay the indebtedness existing prior to the adoption of the Constitution, for the Constitution itself and the statutes make a difference in funds levied for that purpose. No such distinction can be found, however, in funds appropriated and levied for the purpose of erecting a courthouse, or for any other extraordinary or unusual purpose.

County taxes may be appropriated and levied for ordinary county expenses which arise in the usual course of the administration of county affairs from year to year, and also for extraordinary purposes which may arise one time or at rare intervals in the history of the county, but they both fall within the general classification of "county purposes." The fact that the appropriation and levy is for an extraordinary and unusual purpose does not alter the classification. The effect of a special levy of taxes for the extraordinary purpose of erecting a courthouse amounts

to no more than an appropriation to that particular purpose of the fund arising from that levy, and is, by the Constitution, hedged about with no other or greater restriction than funds appropriated and levied for other county purposes.

The case of *Durrett* v. *Buxton,* 63 Ark. 397, and the cases of *Hilliard* v. *Bunker,* 68 Ark. 340 and *Bowman* v. *Frith,* 73 Ark. 523, following it, are pressed upon our attention as conclusive of the case at bar. They are not, however, decisive of the question now presented. The question decided in those cases is that a tax levied to build a courthouse becomes an appropriation of the funds arising therefrom to that purpose, and that the county court may make a contract for the erection of the building without any other appropriation having been made by the levying court. The question of the right of a taxpayer to pay his part of the tax so levied with county warrants drawn on another county fund did not arise in either of those cases. It is true that the court in *Durrett* v. *Buxton, supra,* said that "the tax levied to build a courthouse by the Pike County Court was a special tax levied for a specific purpose, and can not be lawfully used for any other;" but the court was then dealing with the question of the power of the county court to contract for the building of a courthouse where no appropriation had been previously made by the levying court, and said further that "the money arising from the collection of it became an appropriation by law for the purpose for which it was levied." Citing *Worthen* v. *Roots,* 34 Ark. 360.

The decision in the last mentioned case (*Worthen* v. *Roots*) was rendered only a few years after the adoption of the Constitution of 1874, and the learned Justice who delivered the opinion was a member of the convention which framed that instrument and submitted it to the people for adoption. In discussing the statute now under consideration (Act Dec. 14, 1875, Kirby's Digest, § 1174) he treats it in the broadest sense as "declaring and enforcing the constitutional policy of making warrants receivable for taxes." He says, "A review of all this legislation anterior and subsequent to the Constitution of 1874, together with that Constitution itself, reveals a settled policy, almost in terms enjoined by the Constitution itself, * * * of supporting the credit of the counties, and encouraging the citizens to render their

services with alacrity, by making claims against the county a setoff for taxes."

We think that the Legislature has, in the plainest terms, declared that all county warrants shall be receivable for all county taxes, except those levied to pay indebtedness existing at the time of the adoption of the Constitution and interest thereon, and we cannot say that the statute is in conflict with the provisions of the Constitution. The statute seems rather to be in direct line with the policy declared in the Constitution. It is our duty to uphold and enforce the statute, rather than declare it void, unless it be found to be clearly in conflict with the Constitution. Cooley, Const. Lim. (7 Ed.), p. 255; *State* v. *Moore,* 76 Ark. 197; *Waterman* v. *Hawkins,* 75 Ark. 120; *State* v. *Sloan,* 66 Ark. 575.

Much can be said on both sides concerning the propriety and expediency of adopting the policy of allowing the taxpayer to pay all of his county taxes with county warrants. It may be said, on the one side, as argued here, that, where a county is considerably in debt, and has a large amount of outstanding warrants, to allow all the taxes to be paid with warrants results in preventing the making of an economical contract for the erection of public buildings, and retards the payment for same; on the other hand, it may be said that, by allowing such payment of taxes with county warrants, a more enlarged use is given to them, without restriction or discrimination, thereby enhancing the market value thereof, and that this results in a corresponding benefit alike to the county and to those who perform services for it and receive warrants in payment for their services. With the policy or expediency of the law we have nothing to do. It is simply our duty to declare and enforce it as found.

Certain it is, however, that it has become the fixed policy of our law, by the terms of the Constitution and the statutes, to allow the taxpayer this privilege, and the circuit court was correct in so declaring in this case.

Judgment affirmed.

BATTLE, J., dissenting.