PRATT *v.* STATE.

Opinion delivered January 29, 1923.

1. INTOXICATING LIQUORS—MANUFACTURE—EVIDENCE.—In a prosecution charging defendant with being interested in the manufacture of alcoholic, fermented and intoxicating liquors, evidence *held* sufficient to connect defendant with the manufacture of such liquors.

2. CRIMINAL LAW—INSTRUCTION—ARGUMENTATIVENESS.—In a prosecution for manufacturing intoxicating liquors, where defendant claimed that the mash which he had was being prepared for hog feed, a requested instruction that, to convict defendant, you must find that he manufactured some of the liquors prohibited by law or was interested in the manufacture, "and it is not sufficient that he was interested in the mash only as hog feed," was argumentative, and carried a suggestion that the mash in question was prepared for hog feed.

Appeal from Lawrence Circuit Court, Eastern District; *Dene H. Coleman,* Judge; affirmed.

*Smith & Gibson,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

HART, J. W. E. Pratt prosecutes this appeal to reverse a judgment of conviction against him upon an indictment charging him with being interested in the man-

ufacture of alcoholic, fermented, and intoxicating liquors, contrary to the statute.

On the part of the State it was shown that the sheriff of Lawrence County procured a search warrant to search the house of Lute Smith, situated in the Eastern District of Lawrence County, Ark., for a still. When the officers reached Smith's home, he was absent, but they found his wife and daughter and the defendant Pratt in the house. Upon searching the house they found four fifty-gallon barrels of mash which had begun to ferment, and was intoxicating. The mash was made of chops, sugar and water, and tasted like it had just begun to sour and "work up good." They also found a number of fruit jars containing about one-half a teacup each of moonshine whiskey. When the officers entered the house, Mrs. Smith made a motion towards her daughter, and the daughter left the house with a half-gallon fruit jar full of whiskey. The officers attempted to seize her, and after a struggle with the mother, who went to the assistance of her daughter, they took the whiskey away from the daughter. During this time the defendant ran away from the house and hid in a treetop, where he was captured by one of the officers. He admitted to the officers that he was interested in the mash, and said that it had been prepared for hog feed.

Mrs. Smith stated to the officers, in the presence of the defendant, that her husband and the defendant had made the mash while she was away from home. The officers found where there had been a furnace prepared in the smokehouse and a pipe was in a ditch leading off from it, indicating that whiskey had been manufactured there. They found no worm, but there were several containers in the smokehouse which smelled of whiskey.

The defendant was a witness for himself, and denied having anything whatever to do with manufacturing whiskey at Smith's house, and stated that he just happened to be there on the day in question.

The evidence for the State clearly shows that the mash was suitable for making intoxicating liquors, and had been used and was being used for that purpose. This is shown not only by the fact that the mash was in a state of fermentation and was intoxicating, but other intoxicating liquors were found on the premises.

According to the testimony of the officers, the defendant admitted that he was interested in making the mash, but stated that it was being prepared for hog feed. The fact that sugar was used in its preparation negatived the idea that it was being prepared to feed hogs. The fact that it was in a high state of fermentation and that there were four fifty-gallon barrels of it, also tended to show that the mash was being used to make moonshine whiskey. The evidence for the State was sufficient to connect the defendant with the manufacture of intoxicating liquors and to support the judgment of conviction.

The court specifically told the jury that it must find beyond a reasonable doubt, from the evidence in the case, that the liquor found in the barrels was alcoholic or intoxicating liquor, and that the defendant was interested in making it, before it would be authorized to convict him. This was a clear presentation of the theory of the State. But it is contended by counsel for the defendant that he was entitled to have his theory of the case submitted to the jury in an appropriate instruction. His claim was that the mash was being prepared for hog feed, and that he had a right to have this theory of the case submitted to the jury, in compliance with the rule announced by this court in *Milliner* v. *State,* 154 Ark. 608. This is true if the defendant had asked a correct instruction on this point. The instruction asked by the defendant is as follows:

"You are instructed that, before you would be authorized to convict the defendant under this indictment, you must find that he manufactured some of the liquors prohibited by law, and named in the charge, or was interested directly or indirectly in the manufacture of the

same. And it is not sufficient that he was interested in the mash in proof only as hog feed."

The concluding part of the instruction is what the defendant claims presented his theory of the case. It will be noted that this part of the instruction is argumentative in form, and for that reason the court was not required to give it. The instruction carried with it a suggestion by the court that the mash in question was prepared for hog feed, when all that the defendant was entitled to was to have this question submitted to the jury. In other words, it was a question for the jury to say, under all the facts and circumstances in evidence, whether or not the mash in question was being prepared for hog feed. The court could not indicate to the jury that this was the use to be made of it.

We find no reversible error in the record, and the judgment must therefore be affirmed.